U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 2 0 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

---

THOMAS JONES, JR.

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1703
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Thomas Jones, Jr. ("Jones"). See Record Document 126. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Jones, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination

---

[1]Much of the background is adopted from the court's previous summary judgment ruling. See Record Document 107.

Law, and the Louisiana Commission on Human Rights. See Record Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Jones, the court dismissed his discrimination and retaliation claims based on a 2009 disciplinary letter and his Title VII claims. See Record Document 108. The court also dismissed Jones's emotional distress claim. See id. The court now addresses Jones's remaining claims of failure to promote and his hostile work environment claim, which are brought pursuant to 42 U.S.C. § 1981.[2]

## II. ANALYSIS

**A.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and

---

[2]To the extent that Jones's failure to promote claims are also brought under state law, the court's ruling does not change.

[3]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.      Timeliness Of Failure To Promote Claims.**

Jones claims that Cleco failed to promote him to the Supervisor of Power Plant Maintenance position in 2005 and the Fuel Handling Supervisor position in 2008. Jones also asserts in his first supplemental complaint several other failure to promote claims arising in 1991, 2000, 2001, 2002, and 2003; however, he does not appear to address them in his memorandum in opposition to Cleco's second motion

3

for summary judgment.  See Record Document 5 at 37-40.  Cleco asserts that these claims are time-barred and are otherwise without merit.

Section 1981 does not contain a statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492."  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985).  However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989).  Section 1981 "did not protect against harassing conduct that occurred after

4

the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable

5

under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Jones filed his complaint on December 11, 2009. Therefore, regardless of which prescriptive period applies, Jones's failure to promote claims arising in 1991, 2000, 2001, 2002, 2003, and any other claims arising before December 11, 2005, have prescribed.

Regarding the 2005 Supervisor of Power Plant Maintenance position, Cleco argues that a promotion to that position would have resulted in substantial changes to Jones's job responsibilities, duties, and salary, and, therefore, his claim is subject to Louisiana's one-year prescriptive period. The duties and responsibilities of the position included managing a coordinated plant maintenance program and marshaling all available resources to achieve best in class results in the areas of

6

personnel safety, environmental compliance, and unit availability.  See Record Document 126, Ex. B at 2.  The position supervised approximately forty-seven positions, including Jones's position of Field Maintenance Supervisor.  See id.  In contrast, Jones's duties as Field Maintenance Supervisor included, inter alia, "supervising the mechanical maintenance activities associated with the lignite handling and Flue Gas Desulfurization ("FGD") area equipment, mobile equipment maintenance, landfill operations (third party contract), and solid waste impoundments."  Id. at 1.  At that time, Jones supervised approximately sixteen positions.  See id.  Additionally, had Jones been promoted to the position, his salary would have increased from approximately $75,540 per year to a range of approximately $79,317 to $80,828 per year.  See id., Ex. C at 1-2.

In his opposition, Jones only asserts that his section 1981 claims were made possible by the 1991 amendments and, therefore, are subject to the four-year statute of limitations.  He makes no substantive argument that the promotion would not have resulted in substantial changes to his job responsibilities or his salary. Considering the arguments of both parties, the court finds that a promotion to the position of Supervisor of Power Plant Maintenance would have resulted in substantial changes to Jones's responsibilities, duties, and salary.  As a result, his

failure to promote claims arise under section 1981 prior to the 1991 amendments, and, therefore, Louisiana's one-year prescriptive period applies.

Although the parties dispute the exact date on which the Supervisor of Power Plant Maintenance position was filled, the parties do not dispute that the position was filled in late 2005.  Cleco alleges that the decision to promote Marty Robinson ("Robinson") to the position instead of Jones was made on November 4, 2005.  See Record Document 125, Ex. B at 2.  Jones contends that Robinson was not promoted until December 17, 2005.  See Record Document 135, Statement of Material Facts at ¶ 8.  Regardless of which date is correct, Jones filed his complaint more than one year after his claim arose.  See Record Document 126, Ex. B at 2. Accordingly, Jones's claim arising from Cleco's failure to promote him to the Supervisor of Power Plant Maintenance position is untimely.[4]

## C.    Merits Of Failure To Promote Claims.

Assuming, arguendo, that Jones had brought his failure to promote claims in a timely manner, they would still fail on the merits.  "An employee can prove discrimination through direct or circumstantial evidence."[5]   Jones v. Robinson

---

[4]The court does not find it necessary to address the timeliness of Jones's 2008 failure to promote claim for reasons stated below.

[5]Jones's failure to promote claims brought pursuant to section 1981 are analyzed under the same standards as Title VII claims.  See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).  For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[6]  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[7]

Davis, 383 F.3d at 317 (citations omitted).

Jones denies Cleco's assertion that he does not have direct evidence of racial discrimination and merely instructs the court to see his statement of material facts for support.  See Record Document 135, Memorandum in Opposition at 9.  If Jones is referring to Exhibit E, it contains printed emails regarding individuals who

---

[6]"The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).

[7]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

expressed interest in certain promotional opportunities within Cleco. Copies of these emails contain handwritten notes indicating a candidate's race, sex, and age. Jones's assertion that these emails are direct evidence is mistaken. "Direct evidence is evidence which if believed, proves the facts without inference or presumption." Jones, 427 F.3d at 992. The emails found in Jones's Exhibit E are quintessential circumstantial evidence. The court also finds it noteworthy that despite Jones's contention that he has produced direct evidence, he proceeds to make his case under the McDonnell Douglas framework, which is the test used for circumstantial evidence. Accordingly, the court will conduct its analysis under McDonnell Douglas.

### 1.    2005 Failure To Promote Claim.

Cleco argues that even if Jones could establish a prima facie case of discrimination, his 2005 failure to promote claim fails on the issue of pretext. Cleco presents the following justifications for selecting Robinson over Jones for the Supervisor of Power Plant Maintenance position: Robinson previously held the position of Field Maintenance Supervisor over the Electrical and Instrumentation area ("E&I"), which was responsible for all electrical and instrumentation equipment maintenance plant-wide; he had exceptional knowledge of plant systems, processes, and equipment in all areas of the plant that extended beyond

his accountabilities as the Field Maintenance Supervisor over E&I; he possessed solid technical and risk management decision making skills; he demonstrated an open and engaging communication style; and he showed the ability to work effectively with others. See Record Document 126, Ex. B at 2. Cleco also claims that Jones was not selected for the position because his experience was primarily concentrated in the lignite handling area and the FGD area and he had limited experience with other areas of the plant, specifically the power block. Furthermore, Jones allegedly had communication and teamwork issues with co-worker and fellow Field Maintenance Supervisor, James Urda ("Urda"), which had negative impacts on the plant and organization. See id., Ex. B at ¶ 6.

Cleco has presented its legitimate, nondiscriminatory reasons for not promoting Jones to the Supervisor of Power Plant Maintenance position; now the burden shifts to Jones to demonstrate that Cleco's reasons were pretextual. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." McCoy, 492 F.3d at 557. "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart

Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)).  A plaintiff can also show pretext by demonstrating that he was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."  Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (quoting EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995)).  To satisfy this standard, the plaintiff must submit evidence establishing that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  Id. at 923 (quoting Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001)).  "This evidence must be more than merely subjective and speculative."  Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996).  When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions.  See LeMaire v. La. Dept. Of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007).

Jones first argues that he has established pretext by presenting direct evidence of racial discrimination through the emails that contain handwritten notes indicating the race, sex, and age of candidates for promotions.  The court finds this argument unconvincing.  As previously mentioned, this evidence is not direct but circumstantial.  Even more significant is the absurdity of Jones's argument. Obviously, the handwritten notes would not have been on the emails before they

12

were actually sent.  Furthermore, Felice Burton ("Burton"), Cleco's Employment Coordinator, stated in her declaration that, once a job posting closed, she would draft, sign, and send an email to the hiring supervisors indicating the names of the individuals who applied.  See Record Document 126, Ex. K at 2.  A copy of that email would then be placed in the job log.  After a selection was made, a panel would review information regarding the application process which included, among other things, each candidate's race, sex, and age.  Sometimes this information would be typed on a separate sheet of paper and at other times Burton would write the information next to the candidate's name on a copy of the email previously mentioned.  See id.  There is no tenable evidence that the information was utilized before interviews were conducted.

Jones also argues that a jury could conclude that he was "clearly better qualified" for the position than Robinson.  To support this claim, he states that he "supervised employees all over the plant for over twenty (20) years, had a Bachelor's degree, went for as many trainings and learning opportunities that were made available to him, and took on additional responsibilities and duties at Cleco consistently."  Record Document 135, Memorandum in Opposition at 8.  While his assertions may show that he was qualified for the position, they are insufficient to show pretext.  He must demonstrate that he was clearly better qualified for the

13

position.  Jones has failed in this regard.  All he has presented is his own opinion that he was clearly better qualified.

Regarding the credibility of Cleco's proffered reasons for selecting Robinson, Jones alleges that he had several years of experience in the power block, supervised workers in the power block, and that he and Urda did not have the type of relationship as described by Cleco.  He instructs the court to see "Jones Affirmation Exhibit C paragraph 72" in support.  The court did not find an exhibit with this specific title but did find the Declaration of Thomas Jones in plaintiff's Exhibit C; however, at paragraph seventy-two, the following is provided:

> I also take over the counter medication to try to relax, and deal with the emotional trauma and stress from work, which is carried over into my daily life.  For example, I have anxiety and sleep problems.

This information has no relevance to Cleco's proffered reasons for not promoting him.  The court did, however, find the relevant information in paragraph seventy-three.  Regardless, even if what Jones alleges is true, his allegations do not establish pretext.  "The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."  Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991) (citing Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507 (5th

14

Cir. 1988)). Even an employer's incorrect belief can constitute a nondiscriminatory reason so long as it was relied upon in good faith. See Little, 924 F.2d at 97. Jones has presented no evidence that Cleco relied upon its proffered explanation in bad faith.

Jones has clearly failed to show that Cleco's proffered reasons are unworthy of credence or that he was clearly better qualified for the position of Supervisor of Power Plant Maintenance. Other arguments and allegations presented by Jones in his numerous evidentiary documents are either conclusory or irrelevant to his claim. Accordingly, Jones's 2005 failure to promote claim must be dismissed.

## 2.   Merits Of 2008 Failure To Promote Claim.

Jones's 2008 failure to promote claim arises out of a departmental restructuring in 2007 and 2008. In late 2007, internal discussions began regarding a possible restructuring of the Plaint Maintenance and Operations Departments at the Dolet Hills facility. See Record Document 126, Ex. B at 3-4. The restructuring involved moving the lignite handling operational functions from the Plant Operations Department to Jones's Balance of Plant Maintenance ("BOPM") department to form a Fuel Handling Department and changing Jones's title from Field Maintenance Supervisor to Supervisor of Fuel Handling. In the new position, Jones would have twenty-three positions report directly to him. See id.

15

Jones took part in the discussions and suggested an organization structure that included a manager position over the department that he would assume.   His organizational plan reflected that of the H.W. Pirkey Power Plant's organizational chart.   However, the final organizational structure did not include a manager position as Jones recommended.   See id., Ex. B at 4 and B-1.   Prior to the completion of the restructuring, the Lead Fuel Handling Technician position and open positions that would be reporting directly to Jones were filled and the position description for Jones's new position was created.   On June 24, 2008, the position description was completed and Jones's title was effectively changed to Supervisor of Fuel Handling on August 23, 2008.   See id., Ex. B at 4-5.   Cleco maintains that Jones's new position was not a promotion but was a lateral transfer.

Cleco argues that Jones cannot state a prima facie case for his claim.   To establish a prima facie case of race discrimination based on a failure to promote, the plaintiff must demonstrate:

> (1) that the employee is a member of [a] protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications.

Davis, 383 F.3d at 317 (citations omitted).   Cleco argues that Jones cannot establish the third and fourth elements of his prima facie case because Jones was

actually selected for the Supervisor of Fuel Handling position in August of 2008 and further argues that Jones's claim is not a failure to promote claim.

In opposition, Jones alleges that Patrick Dupuy ("Dupuy"), Jones's superior, agreed that he would promote Jones to manager after the restructuring and requested that Jones develop the organizational plan. See Record Document 135, Ex. C, Declaration of Thomas Jones at ¶ 77. He further alleges that he did develop the plan but it was rejected and a white male was promoted instead, although he does not identify the white male.

The court finds that Jones has failed to state a prima facie case for his failure to promote claim. The evidence shows that he was selected for the position of Supervisor of Fuel Handling, to which he admits. See id., Statement of Material Facts at ¶ 16. Regarding his assertion that he should have been promoted to a manager position and his organizational plan should have been adopted, Jones offers nothing more than his own self-serving declaration that Dupuy agreed to make him a manager. Conclusory allegations and unsubstantiated assertions are insufficient to satisfy Jones's burden at summary judgment. See Ramsey, 286 F.3d at 269. There is no tenable evidence to substantiate the existence of this promotion.

Furthermore, the court does not find that Jones's claim is truly a failure to promote claim. What Jones seems to complain about is not Cleco's failure to promote him to a position to which he applied, but Cleco's failure to create a position which he thought he deserved, or, phrased another way, Cleco's failure to treat him in the way he desired. Jones's claim is better characterized as a general discrimination claim. Regardless of the exact nature of Jones's claim, the court cannot glean anything from the record that supports racial animus or discriminatory conduct on the part of Cleco as to this specific claim. Accordingly, Jones's failure to promote claim arising out of these events must be dismissed.[8]

D.    **Hostile Work Environment Claim.**

In order to establish a hostile working environment claim, Jones must prove that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently

---

[8]Even if Jones could establish a prima facie case for his 2008 claim arising out of the Supervisor of Fuel Handling position, there is nothing in the record to support a finding that Cleco's explanation was pretextual.

> severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted).

Jones asserts a litany of allegations to support his hostile work environment claim. Most of these allegations, however, are either conclusory statements of racial discrimination, inadmissible hearsay, unsubstantiated assertions, or statements that do not relate personally to Jones.[9] Of his numerous allegations, only a few are relevant to Jones's claim. For example, he alleges that he

> frequently was harassed by Mr. Dupuy, as well as, the constant racial harassment and remarks made by White employees, which humiliated the Plaintiff. The Plaintiff had the workers in his group taken from him in order for White employees to use them, as well as other instances where his work was interfered with so that White employees could have an advantage over him.

---

[9]Jones asserts several allegations that have no relation to him and were experienced by other individuals. As he was not subjected to these acts, they cannot support his claim for hostile work environment.

19

Record Document 135, Memorandum in Opposition at 17.  He also states that he was not allowed to do things that white supervisors were allowed to do.  Despite these claims, Jones does not give any specific examples of such conduct, nor does he offer any proof that the alleged conduct was race-based other than his own self-serving statements.  Such statements are conclusory and unsubstantiated and do not support a claim of hostile work environment.

Furthermore, Jones's other allegations, if true, are not sufficiently severe or pervasive to alter the conditions of his employment with Cleco.  For these reasons, Jones has failed to establish his claim of hostile work environment, and, therefore, his claim must be dismissed.

## III.  CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 126) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to any of Jones's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ___20th___ day of February, 2013.

_____
JUDGE TOM STAGG

20